Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 627 | **DATE** | 9/16/2010 |
| **CASE TITLE** | Hughes, et al. vs. City of Chicago, et al. | | |

**DOCKET ENTRY TEXT**

Before the Court is Defendants' joint motion to bifurcate and enter a certification on Plaintiffs' remaining *Monell* claim [130]. For the reasons stated below, the motion [130] is respectfully denied without prejudice.

■[ For further details see text below.]

Docketing to mail notices.
*Copy to judge/magistrate judge.

# STATEMENT

**I.  Background**

Because the circumstances leading to the filing of Defendants' joint motion to bifurcate and enter a certification on Plaintiffs' remaining *Monell* claim [130] are somewhat complex, the Court will summarize them briefly.

In a September 2009 minute order [100], the Court set a February 2010 trial date in this matter. After setting that date, the Court discovered in the process of working through Defendants' motion for partial summary judgment [77] an issue relating to Plaintiffs' *Monell* claim that, in the Court's view, raised the prospect of additional discovery and a second round of summary judgment briefing. Specifically, in their response in opposition to Defendants' motion, Plaintiffs relied on deposition testimony elicited in another case involving Defendant City of Chicago, *Daniels v. City of Chicago*, No. 08-cv-6832 (N.D. Ill.), that Plaintiffs contend contradicted the City's written discovery responses in this case and raised a genuine issue of material fact as to the City's policies concerning field test kits. In their reply brief on summary judgment, Defendants objected to the consideration of the deposition testimony from the *Daniels* case.

In its November 25, 2009 memorandum opinion and order [103, at 15-18], the Court noted the dearth of legal authority in support of a *Monell* claim for inadequately training police officers on conducting narcotic field tests. But before addressing the viability of Plaintiffs' legal theory, the Court addressed Defendants' contention that Plaintiffs lacked any admissible evidence. As the Court explained, under the pertinent case law, Plaintiffs bore the burden of showing that the deposition testimony from the *Daniels* case was admissible at summary judgment. The Court requested supplemental briefing on that issue, as well as on Defendants' contentions that the deposition testimony should be excluded as untimely and unfairly prejudicial.

# STATEMENT

In a minute order dated December 21, 2009 [113], the Court overruled the City's blanket objection to consideration of the deposition testimony in view of the similarity of the parties and issues and the potential discrepancy between the testimony of the officers in the two cases. However, to avoid any prejudice to Defendants from the consideration of that evidence – which was discovered after the close of fact discovery and after Defendants filed their motion for summary judgment – the Court ruled that the City should be entitled (1) to take additional discovery on the issue of narcotics field tests and (2) to file a renewed motion for summary judgment if, at the end of the additional period of discovery, it felt that it was entitled to judgment as a matter of law under Rule 56. At the same time, given the then-impending trial date, the Court bifurcated the *Monell* claim and reopened its referral of discovery supervision to Magistrate Judge Cox so that the parties could efficiently tie up any loose ends in regard to the *Monell* discovery.

In early January, Judge Cox held a status hearing and extended the deadline for *Monell* discovery to March 9, 2010. The following day, Plaintiffs filed a motion [120] requesting that this Court move the trial date so that all claims could be tried together. In an oral ruling on January 12, the Court granted Plaintiffs' motion [125] in part. The Court began by expressing the view that it makes sense to decide whether to bifurcate *Monell* claims either at the very beginning of a case (where efficiency concerns may counsel in favor of bifurcation both for discovery and trial) or toward the end of the case, just prior to trial, at which time everyone has a reasonably clear picture of the issues to be tried and any prejudicial effects of trying all of the claims, including those under *Monell*, at the same time. See 1/12/10 Tr. at 2. The Court also indicated that although it was inclined on the then-current state of the record to have a single trial, it also was "inclined to put off the bifurcation issue until the very end" to allow the further discovery and potential renewed summary judgment motion to run their course. *Id*. at 3. As the Court concluded, "I'm not going to resolve the bifurcation issue until I see the whole picture again" in order to make an informed judgment as to (1) whether there would be a triable *Monell* claim and (2) if so, whether that claim should be part of a single trial or bifurcated. *Id*. at 6.

The parties then appeared before Judge Cox again on March 9, at which time the parties advised that they needed additional time to agree on a discovery plan for the *Monell* claims. On March 18 and March 24, the parties appeared before Judge Cox and this Court, respectively, at which time Defendants advised both judges that they planned to file a motion for a stipulation that, if entered, might obviate the need to move forward on the *Monell* claim at this time. In view of Defendants' representation, Judge Cox indicated that she would await this Court's ruling on Defendants' motion asking for entry of a stipulation on the *Monell* issues before "tak[ing] up the issue of what discovery, if any, is appropriate" on the remaining *Monell* matters. 3/18/10 Tr. at 4. Although Defendants suggested at the March 24 status hearing that the motion would be filed later that day (3/24/10 Tr. at 3), it actually was not filed until almost a month later, on April 22. The Court took full briefing on the motion, which now is ready for decision.

**II.     Analysis**

In the motion, Defendants contend that the Court's ruling – that the parties proceed with discovery and any further motion practice on the *Monell* issue – would unduly complicate this case and unduly prejudice the defendants in the *Daniels* case. Plaintiffs counter that keeping the *Monell* issues on track for further development is the more efficient course at this time and that Defendants' focus on the *Daniels* case is simply a distraction.

On the basis of the testimony in *Daniels*, Plaintiffs contend that Defendants' oral and written representations concerning the existence of field drug tests were "false." Defendants dispute that characterization and, in fact, insist that the deposition testimony in *Daniels* indicates that Defendants' prior representations in this case were correct. The essence of the Court's December 21, 2009 ruling was that Plaintiffs in the *Hughes*

| STATEMENT |
|---|

case could designate (after the discovery deadline) new witnesses on the issue of field testing in view of the fact that the witnesses (which since have been designated) are City of Chicago police officers whose testimony *may have* contradicted the positions taken on the same issue by other City of Chicago police officers in this case. And all that the Court anticipated in reopening discovery was giving Defendants an opportunity to further develop the facts relating to Plaintiffs' contentions and to file a renewed motion for partial summary judgment if warranted.

Defendants contend that the additional *Monell* discovery "threatens to completely consume" this case and that a trial including the *Monell* claims would "dwarf" the shorter trial that Defendants anticipate on the non-*Monell* claims against the individual Defendants. As to the former, the Court is hard pressed to see how Defendants' position could be correct. Plaintiffs have designated only two additional witnesses on the sole issue (field testing) as to which further discovery may be warranted. Those witnesses – Officers Nunez and O'Grady – are the individuals whose testimony in the *Daniels* case, Plaintiffs contend, contradicts the testimony given in this case on the City's policies. Plaintiffs have not designated any experts on the field testing issue. Moreover, both Nunez and O'Grady are employees of the City of Chicago, and thus the need for the City itself to depose those witnesses – as opposed to simply interviewing them – is unclear at this point. Defendants have raised the specter of designating and deposing additional witnesses, but they have not convincingly demonstrated who among the nine other witnesses who have been deposed in the *Daniels* case *would* (as opposed to *might*) be designated in this case and why their testimony would be pertinent. Defendants also assert prejudice on the basis of concerns about "unilateral discovery" and shifting burdens of proof, but neither of those arguments is persuasive, either. In its November and December 2009 orders [103, 113], the Court outlined the pertinent legal standard and addressed Defendants' objections concerning Plaintiffs' proposed use of the testimony elicited in the *Daniels* case. And after taking supplemental briefing from the parties specifically on that issue, the Court concluded [see 113, at 2] that, especially in view of the similarity of the parties and the issues, the evidence was relevant to the City's policies and training (or lack thereof) on field testing. The Court further concluded that Defendants would be given an opportunity to "conduct additional discovery on the issue of narcotics test kits," as they had requested [106, at 9], in the event that the Court was inclined to consider the new evidence and did not grant summary judgment for Defendants on the *Monell* claim in any event. And as to Defendants' "burden of proof" concerns, from the Court's perspective, the only burden that Defendants have in regard to the field testing issue at this time is to demonstrate, if they can, the absence of a genuine issue of material fact if they wish to defeat Plaintiffs' *Monell* claim at summary judgment – which, after all, is the context in which this side skirmish developed. After the Court's November 25 order spotted the issue, the Court's December 21 order determined that the deposition testimony could be considered in opposition to Defendants' summary judgment motion, but only in the context of further factual developments that Defendants may wish to undertake in support of the contention that, notwithstanding the deposition testimony, summary judgment still is appropriate on the *Monell* claim.

For all of these reasons, the Court is unconvinced that stopping the *Monell* discovery in its tracks is necessary to avoid either unduly complicating this case or prejudicing anyone in this case or the *Daniels* case. The Court remains of the view that the best course for the management of this case is as follows: (1) complete *Monell* discovery (under Magistrate Judge Cox's supervision); (2) determine whether a renewed motion for summary judgment on the *Monell* claim is appropriate (and, if so, resolve that motion); and (3) determine, after discovery is complete and further dispositive motions (if any) have been resolved, whether bifurcation of the *Monell* issue at trial is appropriate. That is the course that the Court attempted to set earlier this year, and the Court is not persuaded to derail that course through the entry at this time of a bifurcation order and a stipulation along the lines proposed by Defendants. As a final matter, the Court reiterates that, contrary to the tenor of both parties' submissions on the instant motion, the Court has not definitively ruled on the

| STATEMENT |
|---|

bifurcation issue and does not intend to do so until after any further *Monell*-related discovery and motion practice is complete.

**III.     Conclusion**

For the reasons stated above, Defendants' joint motion to bifurcate and enter a certification on Plaintiffs' remaining *Monell* claim [130] is respectfully denied without prejudice.