IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| DEWITT HUGHES and CHERANNZETTA STAGGER-HUGHES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 08 C 627 |
| CITY OF CHICAGO, CHICAGO POLICE OFFICER IZA, Star # 12957, and CHICAGO POLICE OFFICER UCZEN, Star # 6857, | ) ) ) ) | Judge Dow Magistrate Judge Cox |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## PLAINTIFFS' MOTIONS *IN LIMINE*

**PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO BAR UNIDENTIFIED
PRINT-OUTS RELATING TO DRUG PACKAGING**

Plaintiffs, by their counsel, Loevy & Loevy, respectfully request an Order barring two
unidentified sheets of paper regarding drug packaging, and barring Defendants from presenting
any testimony related to these documents. In support, Plaintiffs state as follows:

**Argument**

Two days before the close of fact discovery in this case, defense counsel produced two
mysterious sheets of paper that she termed a "training bulletin." Exhibit A (disclosed documents)
and B (November 28, 2008 correspondence submitted with the production). The sheets of paper -
poor quality print-outs from an unidentified electronic source - lack any indication of what they
are, where they came from, or what potential relevance they might have to this case.
Nevertheless, Defendants have listed these pages as one of their exhibits in the proposed pretrial
order (defense exhibit no. 9). Just a glance at these documents generates many questions about
what relationship they could have to this case. Some examples of the unanswered questions
prompted by the print outs:

- Are these papers in fact "training bulletins," as defense counsel calls them?

- What *is* a "training bulletin"?

- Are these two sheets of paper from the same "training bulletin", or are they two
separate "training bulletins"?

- What relationship do these documents have to the Chicago Police Department, if any?

- If these print outs have some relationship to the Chicago Police Department, does the
Department show them to its officers?

- If the Department shows these pages to Chicago police officers, which officers does it
show them to?

- If the Department shows these two pages to police officers, what other materials do the officers see as well?

- If the Department has shown these pages to any of its officers, *when*? At any time that would be even conceivably relevant to this case?

- Did the Defendant Officers ever see these pages?[1]

From the existence of so many unanswered questions, it is clear that Defendants' exhibit is woefully lacking in the required foundation. And no witnesses disclosed by the parties can provide the necessary foundation. Moreover, these documents are inadmissible hearsay: they appear to be offered for the truth of the matter asserted (one of the page's statements: "Capsules used for heroin; Not all capsules contain what you think," Exhibit A), and no hearsay exceptions apply. FRE 801-804.

In addition to their lack of foundation, lack of relevance, and their inadmissibility as hearsay, FRE 403 clearly works to bar these documents. Their contents are unfairly prejudicial and the jury will is at a clear risk of being confused and misled by them. As one example, one of the print-outs indicates that a car battery can be used to stash "dope." Such a "fact" could cause the jury to improperly conclude that Defendant Iza's search of Plaintiffs' car was lawful because people sometimes conceal drugs in automotive parts. Additionally problematic, the documents' admission would likely lead to a side trial regarding the provenance and accuracy of the assertions contained in the documents.

---

[1] The print-outs were produced months after the Defendants' depositions, at their depositions, Defendants provided no testimony regarding these documents.

WHEREFORE, Plaintiffs respectfully requests that this Court enter an Order barring the unidentified print-outs, listed as Defendants' exhibit 9 in the proposed pretrial order (and attached here as Exhibit A).

**PLAINTIFFS' MOTION *IN LIMINE* NO. 2 TO BAR ANY SUGGESTION THAT
MR. HUGHES CONSUMED AN INTOXICANT ON THE DAY OF HIS ARREST**

Plaintiffs, by their counsel, Loevy & Loevy, respectfully request an Order barring any

suggestion at trial that Mr. Hughes had consumed an intoxicant on the day of his arrest. In

support, Plaintiffs state as follows:

**Argument**

On the evening that Mr. Hughes encountered the Defendant Officers, he was in the

process of picking his wife up from work and performing errands. He was sober.

The Defendants, by their own admissions, pulled Mr. Hughes over for "minor traffic"

violations. <u>See</u> Exhibit C (excerpts from the deposition of Defendant Uczen) at 68. They later

arrested him based on their (disputed) account that they saw, in plain view, capsules that they

thought were narcotics, but which have been proven to be vitamins. The Defendants did not

arrest Mr. Hughes for anything having to do with consumption by him of alcohol or drugs.

Nowhere in the Defendants' police reports did they record that Mr. Hughes appeared to be

intoxicated. In fact, nowhere in the Defendants' police reports did the officers note that Mr.

Hughes appeared to have ingested *any* amount of *any* intoxicant, including alcohol. Moreover,

the Defendant Officers conducted no sobriety tests on Mr. Hughes.

Thus, there is no evidence in the record that Mr. Hughes had ingested even so much as a

beer on the day the officers arrested him, much less that he was intoxicated by any substance.

The officers' own records confirm the utter dearth of such facts.

Despite the clear evidence that alcohol (and drug) consumption had nothing to do with

their stop or arrest of Mr. Hughes, Defendant Uczen speculated in this litigation that it "almost"

seemed that Mr. Hughes might have been intoxicated. <u>See</u> Exhibit C at p. 84-85 ("He was very

agitated, <u>almost</u> seemed like he was on narcotics or had been drinking") (emphasis added). Yet

Uczen admitted that he never even thought about charging Mr. Hughes with a DUI, although he did charge Mr. Hughes with drug possession and three traffic violations. Id. at 93. For her part, Defendant Iza never testified that she even speculated that Mr. Hughes might be intoxicated.

Any conceivable probative value of unsupported speculative testimony that a plaintiff may have been intoxicated – and Plaintiffs cannot think of any - is far outweighed by its prejudicial effect. The Seventh Circuit has been consistently clear that courts must pay particular attention to the "considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony." Kunz v. DeFelice, 538 F.3d 667, 677 (7th Cir. 2008) quoting United States v. Cameron, 814 F.2d 403, 405 (7th Cir. 1987). See also United States v. Gallardo, 497 F.3d 727, 733 (7th Cir. 2007); United States v. Robinson, 956 F.2d 1388, 1397-98 (7th Cir. 1992).

Judge Denlow, in a false arrest and excessive force case in which the plaintiff had admitted to smoking marijuana shortly before the incident, barred evidence of the drug use. Mason v. City of Chicago, 631 F.Supp.2d 1052 (N.D.Ill. 2009). He characterized this evidence as "highly inflammatory and prejudicial." Id. at 1058. Acknowledging that the Seventh Circuit determined that drug use may, in some cases, be probative of a witness' ability to recollect, the court held that any such probative value must be balanced with the serious risks of its admission:

> This is a straightforward case that turns on two different versions of the events in question. Plaintiff claims an officer kneed him in the face while he was handcuffed and lying on the ground. Defendant contends Plaintiff was injured while resisting arrest. The case turns on the credibility of the parties involved. The question of whether Plaintiff smoked a marijuana cigarette three hours before the incident is no more probative than whether the officers drank coffee before the incident. The introduction of expert testimony or testimony concerning facts unrelated to the physical encounter would merely divert the jury from the relevant inquiry: when and how did Plaintiff suffer his injury. Marijuana plays no part in this inquiry and the introduction of such evidence serves no purpose other than to make a general character attack on Plaintiff.

6

Id. at 1061-62. Mason applies here. In fact, Plaintiffs have an even stronger argument for exclusion of speculative testimony about intoxication, because - unlike Mr. Mason - Mr. Hughes never admitted to ingesting even a single drink on the day of the incident, and Defendants have no evidence that he did.

For some jurors, drinking or drug use is a "deal breaker," so inflammatory a fact for them as to prevent them from fairly fulfilling their duty to assess whether or not the Constitution has been violated. The same goes for the suggestion that a witness was drinking and driving. Mr. Hughes was not intoxicated by any substance. In this case, testimony by the officers about possible alcohol or drug consumption by Mr. Hughes would amount to unsupported and highly inflammatory speculation that would lead the jury to draw improper conclusions about Mr. Hughes. It should be barred under the Federal Rules.

WHEREFORE, Plaintiffs respectfully requests that this Court enter an Order barring any evidence of testimony suggesting that Mr. Hughes consumed any intoxicant on the day of his arrest.

**PLAINTIFFS' MOTION *IN LIMINE* NO. 3 TO BAR ALL REFERENCES TO THE
NEIGHBORHOOD MR. HUGHES WAS DRIVING THROUGH AS A
"GANG AREA", "VIOLENT ZONE", OR OTHER SUCH CHARACTERIZATIONS**

Plaintiffs, by their counsel, Loevy & Loevy, respectfully request an Order barring

references to the neighborhood in which Defendants pulled over Mr. Hughes as an area relatively

high in crime, violence, gangs, or drugs.  In support, Plaintiffs state as follows:

**Argument**

In his deposition, Defendant Officer Uczen made vague references to the area in which

they pulled over Mr. Hughes as being a "violent zone" and a "gang area."  <u>See</u> Exhibit C

(excerpts from the deposition of Defendant Uczen) at 64-5, 74.  Defendant Iza referred, without

explanation, to "experiences she had" in the area.  <u>See</u> Exhibit D (excerpts from the deposition of

Defendant Iza) at 22. Plaintiffs therefore assume that Defendants will attempt to present the jury

such testimony to justify their arrest of Mr. Hughes on charges of drug possession. But in this

case there would be no probative value to such evidence, and - even if there were - such evidence

would be unduly prejudicial.

As the Seventh Circuit recently opined in a false arrest case, evidence about the

supposedly high-crime nature of an area should be admitted only if there is a link between that

evidence and the facts used by the defendant officers to support arrest. <u>Whitehead v. Bond</u>, ---

F.3d ---, 2012 WL 1813683, at *12 (7th Cir. May 21, 2012). The Court held that "the

characteristics of the location may be one factor officers consider under the totality of the

circumstances when detaining someone," but that "[f]or this factor to carry weight, *there should*

*be a reasonable connection between the neighborhood's higher crime rate and the facts relied*

8

*upon to support probable cause*." Id. (emphasis added) (citing U.S. v. Tinnie, 629 F.3d 749, 758 (7th Cir. 2011) (Hamilton, J., dissenting)).[2]

In Whitehead, the defendant police officers testified that they arrested the plaintiff because she was yelling and being aggressive and "leading the crowd that had gathered in a charge toward [the defendant officer]." 2012 WL 1813683, at *1. The Court found that in light of these facts, the district court did not abuse its discretion in allowing evidence about the characteristics of the location where the arrest occurred:

> Here, there was a connection [between the facts of the arrest and the nature of the neighborhood]. Lt. Stevens was concerned not just with Whitehead's behavior, but also with that of the other people in the crowd (who he testified Whitehead was instigating). In part, because it was a high-violent-crime area, the seemingly agitated crowd posed a greater threat to the officers safety, who feared that violence was more likely to ensue if prompt action wasn't taken to disperse the crowd. The officers could reasonably consider the characteristics of the area in assessing the situation and deciding what action to take to maintain control.

Id. at *12.

The circumstances of the arrest in this case are quite distinct from those of Whitehead. Defendants did not arrest or charge Mr. Hughes on any "safety" basis, such as resisting arrest, assault, battery, or even disorderly conduct. There was no crowd of people for the officers to contend with, or even any spectators.

---

[2] Judge Hamilton, in the cited Tinnie dissent, opined that a "high crime area" should not by itself give constitutional legitimacy to a frisk: 'I ascribe equally little significance to the fact that Tinnie was confronted in a high-crime area 'designated by state and local officials.' While 'the fact that the stop occurred in a "high crime area" [is] among the relevant contextual considerations in a *Terry* analysis,' *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), there still needs to be a reasonable connection between the neighborhood's higher crime rate and the facts relied upon to support a frisk. In other words, we should ask, for example, whether Tinnie's behavior was consistent with that of the violent criminals known to frequent that area. Cf. *Terry*, 392 U.S. at 22–23, 88 S.Ct. 1868 (noting how defendant's noncriminal behavior appeared suspicious when viewed in context). Unless we require at least some such connection, we give law enforcement the impression that frisks will receive much less scrutiny when performed in high-crime areas. That is particularly problematic in this case, where the designated 'high-crime area' occupied *half* of the city of Rockford.' Id.

Here, assuming that the area could be considered "high-crime" or "high drug" (and there has been absolutely no evidence presented corroborating this) the officers both testified that the only reason they pulled over Mr. Hughes was due to "minor traffic" violations. See Exhibit C (Uczen Dep.) at 68; Exhibit E (Defendants' narrative of the arrest, contained in the Vice Case Report). Assuming that the officers attempt to argue that the crime levels in the area contributed to their decision to deem the vitamins in Mr. Hughes' car to be narcotics, this is illogical. There is no connection between the nature of the neighborhood that Mr. Hughes happened to be driving through to any issue in this case, including the reasonableness of the officers' arrest of Mr. Hughes on drug charges. Any purported characteristics of the area that Mr. Hughes was driving through are red herrings.

On the other side of the equation, testimony that Mr. Hughes was in a high-crime or drug neighborhood creates an undue risk of unfairly prejudicing Mr. Hughes without any corresponding probative benefit. For instance, Mr. Hughes was driving toward his mother's house, located in the general vicinity, when he was pulled over. If Defendants are permitted to testify that the neighborhood is high in gangs, crime and/or drugs, the jury may unfairly associate Mr. Hughes' family - and Mr. Hughes himself, of course - with such activities. United States v. Doe, 149 F.3d 634, 638 (7th Cir. 1998) ("[J]uries should not conclude that a particular defendant is guilty simply because the defendant shares some characteristics with a particular group"); United States v. Irvin, 87 F.3d 860, 865-66 (7th Cir. 1996) (observing the considerable danger of unfair prejudice from evidence that suggests guilt by association); Booker v. City of Chicago, Case No. 04 C 6371, November 20, 2008, Dckt. No. 405, Order attached as Exhibit F (granting motion of plaintiff who had been shot by Chicago police officers to exclude references to his

neighborhood as a "high crime area" or "high drug area," because "the probative value of this information does not substantially outweigh the danger of unfair prejudice") (Holderman, J.)

Per the Seventh Circuit's recent holding in <u>Whitehead</u>, unless Defendants can satisfy the Court that there is some relevance to the "high crime area" evidence, other than unfair guilt by association, and that they have proper foundation for such testimony, they should be barred from presenting such inflammatory testimony. 2012 WL 1813683, at *12.


WHEREFORE, Plaintiffs respectfully request an Order barring Defendants from referring to the neighborhood that Mr. Hughes was driving as an area high in crime, violence, gangs, or drugs.

**PLAINTIFFS' MOTION *IN LIMINE* NO. 4 TO BAR ANY REFERENCE TO
PLAINTIFF DEWITT HUGHES' CRIMINAL HISTORY AND THE FACT THAT HE
HAD PREVIOUSLY BEEN AT THE POLICE STATION**

Plaintiffs, by their counsel, Loevy & Loevy, respectfully request an Order barring all
reference to Plaintiff Dewitt Hughes' prior criminal history.  In support, Plaintiffs state as
follows:

**Argument**

Plaintiff Dewitt Hughes is 37 years old, and has been employed as a long-haul and in-city
truck driver and car dealership manager. He has not been convicted of any crime for years.

Mr. Hughes' most recent conviction is eight years old. In 2003, he was arrested for
marijuana possession and was convicted the following year, receiving probation. Additionally,
nearly twenty years ago, in 1993, he received probation for drug possession.

Evidence of these convictions, and of Plaintiff's arrests that did not lead to convictions,
have no place in this trial. Such evidence has no relevance to the merits of Plaintiffs'
constitutional claims, or to Plaintiff Hughes' veracity. Instead, evidence of old convictions and
arrests pose a serious danger that some jurors may rely on them to take an unfairly jaundiced
view of Mr. Hughes, and close their minds to the merits of his claims. See Gora v. Costa, 971
F.2d 1325, 1331 (7th Cir. 1992) ("courts should be careful to ensure that a civil rights plaintiff's
criminal past is not used to unfairly prejudice him or her").  It is for this reason that FRE 403,
404 and 609 limit the admissibility of prior bad act and conviction evidence. They operate in this
case to bar admission of Mr. Hughes' criminal record.

## A. THE CONVICTIONS SHOULD NOT BE ADMITTED

Plaintiff's first conviction for possession of drugs occurred nearly twenty years ago, in 1993, for possession of cocaine. Mr. Hughes received probation for that conviction.[3] The second conviction was nearly ten years ago, and it was for the possession of cannabis. Mr. Hughes again received probation. They were both felony charges.

Federal Rule of Evidence 609(b) bars Mr. Hughes' first conviction, since it is over 10 years old, from being admitted for impeachment purposes "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." FRE 609(b). This time limit is based on the recognition that "convictions occurr[ing] over ten years ago . . . are of little worth in determining credibility." United States v. Bastanipour, 1993 WL 394759, at *1 (N.D. Ill. Oct. 4, 1993). See also U.S. v. Rogers, 542 F.3d 197, 198 (7th Cir. 2008) ("Federal Rule of Evidence 609(b) *severely limits* the use of a prior conviction to impeach a witness if a period of more than ten years has elapsed since the conviction or the witness's release from any confinement imposed for that conviction") (emphasis added); Hernandez v. Cepeda, 860 F.2d 260, 264 (7th Cir. 1988) ("limitations [on the use of convictions at trial] are designed to ensure that evidence of a prior conviction is not used to impermissibly shift the focus of the trial to the witness's past conduct").

Courts have even found that convictions involving violent behavior, of which Mr. Hughes certainly has none, should be not admitted under the Federal Rules. See, e.g., Charles v.

---

[3] Mr. Hughes also disclosed in his interrogatories that he pled to a DUI in Kane County for which he received supervision. Plaintiff estimated that the conviction occurred in approximately 2002, and therefore the conviction is over ten years old. (In disclosing this, Plaintiff had only his memory to rely on, as he did not possess documents relating to the matter.) Defendants have not produced any document related to this charge, nor have they disclosed any intention to present it as evidence. But to the extent that Defendants express to the Court a desire to use this conviction as evidence, Plaintiff moves to bar it on the grounds that it is barred by FRE 609, is unfairly prejudicial and irrelevant, and was never disclosed by Defendants.

Cotter, 867 F.Supp. 648, 656 (N.D. Ill. 1994) (Castillo, J.) ("Whatever marginal impeachment

effect might be added by throwing in his February 2, 1984 (aggravated battery), September 27,

1979 (armed robbery), and March 23, 1979 (burglary) convictions is substantially outweighed by

the unfair prejudice of further suggesting to the jury that Charles is an evil man who does not

deserve any consideration of his claims").

Thus, Mr. Hughes' old conviction can offer no probative value to the issues before the

court and is the kind of conviction that courts routinely bar. Moreover, the Federal Rules of

Evidence requires Defendants to show this Court that the probative value of Mr. Hughes' over-

10-year-old conviction is enough to overcome the Federal Rule's strong disfavor of its

admission. Defendants cannot meet this strong burden. United States v. Bastanipour, 1993 WL

394759, at *1 ("Rule 609(b), which is applicable when the conviction or release from

confinement occurred over ten years before the testimony, and is thus applicable here, sets the

*highest* threshold for admissibility") (emphasis in original).

Neither should this Court admit Mr. Hughes' eight-year-old marijuana conviction.

Because that conviction is not one involving dishonesty, the admission of the conviction is

discretionary, and the Court should engage in the balancing required by FRE 403. Bruce v. City

of Chicago, 2011 WL 3471074, at *10 (N.D.Ill. July 29, 2011) (Dow, J.). Here, where a central

disputed issue is whether Defendants had probable cause to arrest Mr. Hughes for possession of

illegal drugs, the potential for unfair prejudice to Mr. Hughes if his marijuana conviction were

admitted substantially outweighs any probative value that may exist, as this Court notes:

> In exercising his discretion on admission of [prior convictions], the trial judge
> must consider several factors, most importantly the danger of unfair prejudice.
> When the prior conviction and the charged act are of a similar nature, the danger
> increases. The jury is more likely to misuse the evidence for purposes other than
> impeachment, that is, to regard the prior convictions as evidence of a propensity
> to commit crime or of guilt, despite instructions to the contrary.

Id. at *10, quoting United States v. Shapiro, 565 F.2d 479, 481 (7th Cir.1977) (citations omitted) and citing United States v. Cameron, 814 F.2d 403, 405 (7th Cir.1987) ("there is considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony"); United States v. Harding, 525 F.2d 84, 90 (7th Cir. 1975) (strong risk of unfair prejudice when the earlier drug offense and present drug offense are similar); Brandon v. Village of Maywood, 179 F.Supp.2d 847, 854 (N.D.Ill. 2001) ("The main issue for both of his claims is whether the officers had reasonable suspicion to believe that he was involved in a drug transaction, and a jury might improperly consider evidence of his prior convictions for similar offenses as an indication that the officers had a reason to suspect him of the same activity here.").

Here, as in Bruce, "there is a significant risk that the jury will improperly credit Defendants' account because Plaintiff previously engaged in drug-related offenses, not because the evidence of his prior criminality reflects on his 'truthfulness.'" Id. at *10. In Bruce, the defendants apparently argued that they should at least be permitted to present a "sanitized" version of the plaintiff's drug convictions to the jury. Id. at *11. This Court rejected even a sanitized presentation of the convictions:

> Two convictions for comparatively minor drug offenses are less probative of truthfulness than one for perjury or fraud. See also *United States v. Boyd,* 833 F.Supp. 1277, 1359 (N.D.Ill.1993) ('As a general rule, a witness's past drug use is not probative of veracity and thus is not a proper subject for cross examination'). At the same time, the potential for prejudice to Plaintiff is great, and (as noted above), the court of appeals has advised district courts to 'be careful to ensure that a civil rights plaintiff's criminal past is not used to unfairly prejudice him or her.' *Gora,* 971 F.2d at 1331. Here, the main issue for both of Plaintiff's claims is whether the officers had probable cause to believe that he possessed drugs, and a jury might improperly consider evidence of his prior convictions on similar charges as an indication that he, rather than the officers, would lie about the facts surrounding the interaction between Plaintiff and the officers on this separate occasion. In sum, the Court concludes that the potential unfair prejudice

15

outweighs any value that the convictions would have as evidence of Plaintiffs
credibility.

Id. at *11, citing Schmude v. Tricam Industries, Inc., 556 F.3d 624, 628 (7th Cir. 2009).[4]

The same result obtains here.

## B. THE CONVICTIONS SHOULD NOT BE ADMITTED FOR THE ADDITIONAL REASON THAT DEFENDANTS DID NOT DISCLOSE THEIR INTENT TO USE THEM

In May 2008, Plaintiffs tendered the following interrogatory to both Defendant Officers

and to Defendant City of Chicago:

> Please identify any and all criminal convictions of any Person related to this
> lawsuit that you will seek to use at trial for purposes of impeaching any witness,
> or for any other purpose. For each such responsive conviction, identify: (a) the
> witness who has been convicted and the nature of the conviction and (b) the
> complete factual basis as to why the conviction qualifies as admissible under FRE
> 609. Please be advised that your duty to supplement your answer to this
> Interrogatory remains ongoing as discovery progresses, and that Plaintiff intends
> to move in limine to bar any references to convictions not identified in this matter.

---

[4] In Schmude, Judge Posner explained how the admission of felony convictions at trial poses
serious risks to the ideal of "blindfolded justice":

> Allowing a prior conviction to be used to impeach a witness's testimony is controversial.
> E.g., Teree E. Foster, "Rule 609(a) in the Civil Context: A Recommendation for
> Reform," 57 Fordham L.Rev. 1, 17-37 (1988). It is in tension with the most elementary
> conception of the rule of law-what Aristotle called "corrective justice," which means
> judging the case rather than the parties. It is an aspiration that is given symbolic
> expression in statutes of Justice as a blindfolded goddess-blindfolded because she is not
> seeing the individual characteristics of the parties and their lawyers: their party
> affiliation, standing in the community, family, personal attractiveness, record of
> achievement, social class, ethnicity, and so forth. In the federal judicial oath corrective
> justice is called deciding "without respect to persons." And so a felon is entitled to the
> same consideration of the merits of his case as a litigant who has never been convicted
> of a felony, and that entitlement is undermined by allowing a party to a lawsuit to draw
> the jury's attention to the fact that his opponent is a convicted felon. "[E]ven a murderer
> has a right to be free from torture and the correlative right to present his claim of torture
> to a jury that has not been whipped into a frenzy of hatred. At the argument of the appeal
> the lawyer for the officers-who had been the prosecutor at Wilson's criminal trials-
> acknowledged in answer to a question from the bench that he had tried to make the jury
> hate Wilson." Wilson v. City of Chicago, 6 F.3d 1233, 1236 (7th Cir.1993).

Id. at 627.

The Officers and the City of Chicago responded to the interrogatory. They simply referred to Dewitt Hughes' criminal history, not providing any specific convictions that they intended to use at trial, nor did they provide "the complete factual basis as to why the conviction qualifies as admissible." See Exhibit G (Defendant Officers' responses to Interrogatory 8; the City of Chicago's response to Interrogatory 4).

Defendants declined to meet their duty to supplement Plaintiffs' discovery request (of which Plaintiffs reminded them by their interrogatory), thus they should be barred from using those convictions at trial.

## C. MR. HUGHES' ARRESTS THAT DID NOT RESULT IN CONVICTIONS ARE INADMISSIBLE

Regarding Plaintiff's other arrests, the charges were all dismissed by the courts. Arrests without convictions pose incredible prejudice to parties, have little or no probative value, and can lead to mini-trials on side issues. For these reasons, such evidence is almost always inadmissible. See Anderson v. Sternes, 243 F.3d 1049, 1054 (7th Cir. 2001) ("The law is clear that a defendant's prior arrest record is inadmissible, and while the reference to Anderson's past arrest was only indirect, it was still improper"); Bruce v. City of Chicago, 2011 WL 3471074, at *9 (N.D.Ill. July 29, 2011) ("prejudice resulting from the introduction of evidence of Plaintiff's prior arrests outweighs the limited relevance that such evidence would have in this case"); Young v. Cook County, 2009 WL 2231782, at *6 (N.D.Ill. Jan. 27, 2009) (arrest evidence would be "grossly unfairly prejudicial in a way that greatly outweighs the minuscule probative value"); Jones v. Scientific Colors, Inc., 2001 WL 668943, at *2 (N.D. Ill. June 14, 2001) ("Whether any of the claimants have been previously arrested -- as opposed to convicted -- is a matter of slight

probative value in relationship to the claims before the Court. Such inquiries threaten more to confuse than enlighten").

Mr. Hughes' arrests are nothing more than inadmissible prior bad acts evidence (which is disputed to boot).

## D. REFERENCES TO MR. HUGHES' PREVIOUS EXPERIENCES AT THE 25TH DISTRICT POLICE STATION SHOULD BE BARRED

In his deposition, Mr. Hughes stated that years ago he had been brought by police to the same police station that Defendants drove him to in July 2007: the 25th District station at Grand and Central. For the same reasons that the Defendants should not be able to reference Mr. Hughes' previous arrests, they should not be able to make reference to any prior experience Mr. Hughes may have had at the police station. Considering that there is no relevance to the fact that Mr. Hughes had previously been present at the Grand and Central police station, for Defendants to raise this matter would be to circumvent the Federal Rules' prohibition on evidence of a plaintiff's arrest, as the jury would of course assume, in hearing such evidence, that Mr. Hughes had been arrested before his encounter with the Defendants.

The Seventh Circuit has made clear that courts must be vigilant about the danger of justifying violations of important constitutional rights by portraying the victims as bad people through the misuse of prior bad acts. Geitz v. Lindsey, 893 F.2d 148, 151 (7th Cir. 1990) ("We are mindful of our duty to ensure that ... civil rights plaintiffs are not unfairly prejudiced by the use of their criminal pasts against them").

As with numerous other civil rights plaintiffs who have had prior involvement with the police, Mr. Hughes' criminal history is not relevant to the issues in this case, but is indeed highly likely to engender unfair prejudice against him by the jurors. Earl v. Denny's, Inc., 2002 WL 31819021, at *3 (N.D. Ill. Dec. 13, 2002) ("[A] jury may deny plaintiff a verdict and an award,

18

not because it doubts its veracity, but because it is appalled by his prior conduct that has nothing to do with the events in question. That is precisely the kind of unfair prejudice that Rule 403 seeks to prevent").

Accordingly, the defense should be barred from introducing evidence that Mr. Hughes had previously been detained at this or any other police station prior to the day in question.

WHEREFORE, Plaintiffs respectfully request this Court enter an Order barring any reference to Mr. Hughes' criminal history, along with any reference to arrests and experiences at the Chicago police stations that took place before the arrest at issue.

**PLAINTIFFS' MOTION *IN LIMINE* NO. 5 TO**
**BAR ANY REFERENCE TO "BAD ACT" TAX EVIDENCE**

Plaintiffs, by their counsel, Loevy & Loevy, respectfully request an order barring all

reference at trial to Dewitt Hughes' payment or non-payment of income taxes, and to the

question of whether he filed tax returns.  In support, Plaintiffs state as follows:

### Argument

After Dewitt Hughes was wrongfully arrested for heroin possession on July 30, 2007, he

was detained in Cook County Jail until August 4, 2007. Mr. Hughes then was transferred from

Cook County Jail to home confinement. He remained on home confinement until August 22,

2007.

At the time of Mr. Hughes's arrest, he was employed as a truck driver. Mr. Hughes lost

that job because he was not able to work from July 30-August 22, 2007 due to his confinement at

Cook County Jail and in his home, and it took significant time for him to find new employment.

He was damaged as a result. Mr. Hughes has testified that in his employment at the time of

arrest, he was paid $350-$400 weekly in cash, that he did not report that income on tax returns,

and that Mr. Hughes could not remember if he filed tax returns for the years 2004-2007.

Defendants have indicated their intent to question Mr. Hughes about whether and when

he has paid income taxes, including the fact that failure to do so constitutes a crime.  All

references to Mr. Hughes's potential failure to pay income taxes should be barred because the

prejudicial effect of that fact substantially outweighs whatever probative value it has. See Fed. R.

Evid. 403.

The prejudicial effect of this subject is obvious. Suggesting to the jury that Mr. Hughes

failed to pay his taxes would tar Mr. Hughes as someone who violates the law and avoids his

obligations as a citizen. A jury holding that view is unlikely to fairly consider whether Mr.

Hughes has proven his case and is entitled to damages. As Judge Bucklo concluded in <u>Churney</u>

<u>v. Village of Downers Grove</u>, 122 F. Supp. 2d 921, 922 (N.D. Ill. 2000), introduction of the fact

that plaintiff failed to report income on a tax return is "likely prejudicial." Judge Bucklo follows

a practice of excluding evidence *in limine* only if it is "clearly inadmissible for any purpose";

otherwise, she reserves ruling until trial so that the prejudice of a piece of evidence can be

evaluated in context. <u>Id</u>. Even under that standard, Judge Bucklo excluded *in limine* any

reference to the plaintiff's failure to report income on her tax return. <u>Id</u>.

 In this case, the probative value of Mr. Hughes's tax returns is extremely limited.

Defendants' counsel has indicated to Plaintiffs' counsel that Defendants intend to use this fact to

question whether Mr. Hughes actually had been working at the job he testified he was working at

and/or earning $350-$400 per week. To the extent that Defendants have a legitimate need to

question Mr. Hughes' employment, all of the probative value of asking whether Mr. Hughes paid

his taxes can be gained by asking Mr. Hughes if he has any documentation of his employment or

of what he was being paid. There is no need to specifically ask Mr. Hughes if he paid taxes,

much less whether Mr. Hughes failed to pay taxes despite the criminal consequences of such

failure.

 Plaintiffs' counsel made this proposal to defense counsel – that they would not seek to

bar them from asking Mr. Hughes whether he had any documentation of his job or his wages at

that job – but defense counsel rejected this compromise. Instead, it appears that defense counsel

is intent on introducing evidence of Mr. Hughes "criminality" in relation to his tax payment

history, as evidenced by their inclusion on the proposed pretrial order of "Copy of 26 U.S.C. §

7201 (Attempt to evade or defeat tax)" as a proposed demonstrative exhibit for trial.  (Defense Exhibit 12).

In addition to being unduly prejudicial, the evidence of Mr. Hughes's history of payment of taxes or of tax return filing should be excluded, pursuant to FRE 404, as inadmissible evidence of other "bad" acts.  FRE 404(b). If a jury hears that Mr. Hughes failed to pay taxes in violation of the law (and this is a disputed issue anyway) the jury is dangerously likely to conclude that Mr. Hughes acted in conformity with those prior bad acts in some respects regarding the disputed issues in this case.

WHEREFORE, Plaintiffs respectfully request that this Court exclude all references at trial to Mr. Hughes' history regarding his payment and/or filing of tax returns.

## PLAINTIFFS' MOTION *IN LIMINE* NO. 6
## <u>TO BAR REFERENCE TO GANGS</u>

Plaintiffs, by their counsel, Loevy & Loevy, respectfully request an Order barring all references to gangs at trial.  In support, Plaintiffs state as follows:

### Argument

Nothing in this case has anything to do with gangs.  The precipitating event of Plaintiff Hughes' arrest was a simple traffic stop, which the police officers admit was due to "minor" (and factually disputed) traffic violations. Gangs do not enter into any of it.

In fact, the only reason for this Motion is that Plaintiff Dewitt Hughes, who is 37 years old, was candid at his deposition that many years ago he was affiliated with a gang. He has no affiliation whatsoever with any gang today. The Defendant Officers had no awareness of Mr. Hughes' past affiliations at any point during their interactions with Mr. Hughes, and therefore this subject certainly had no influence on any decisions made to stop, search, arrest, and prosecute Mr. Hughes. In sum, there is simply no relevance to Mr. Hughes' remote gang background, making it inadmissible under FRE 401-402.

Moreover, gang references are widely acknowledged as fodder for unfair prejudice. "Like current incarceration, references to gang involvement and gang-related activities generally are highly prejudicial because of the negative connotations ascribed to such activities by the general public." <u>Ellis v. Country Club Hills</u>, 2011 WL 6001148, at *2 (N.D.Ill. Dec. 1, 2011) (Dow, J.). In addition, "[o]ur Court of Appeals has repeatedly recognized 'the insidious quality' of evidence of gang membership as well as 'the damage it can do.'" <u>Finley v. Lindsay</u>, 1999 WL 608706, at *1 (N.D.Ill. Aug. 5, 1999), citing <u>United States v. Sargent</u>, 98 F.3d 325, 328 (7th Cir. 1996).  As the Seventh Circuit explained in reversing a district court for failing to exclude references to an affiliation with a gang called the Diablos:

> [T]he danger of unfair prejudice stemming from the admission of the gang
> evidence in this case was substantial. Gangs generally arouse negative
> connotations and often invoke images of criminal activity and deviant behavior.
> There is therefore always the possibility that a jury will attach a propensity for
> committing crimes to defendants who are affiliated with gangs or that a jury's
> negative feelings towards gangs will influence its verdict. Guilt by association is
> a genuine concern whenever gang evidence is admitted.

United States v. Irvin, 87 F.3d 860, 865 (7th Cir. 1996). See also Ramirez v. City of Chicago,

2009 WL 3852378, at *1-2 (N.D.Ill. Nov. 17, 2009) (Shadur, J.) ("In today's societal

environment, gang membership or affiliation is of particular concern because of the serious

potential for generating unfair prejudice"; barring such references under FRE 404(b) and 403);

Rutledge v. Cook County, 2009 WL 3187904, at *5 (N.D. Ill. Sept. 30, 2009) (reversed on other

grounds) (Lefkow, J.) ("The court addressed the defendants' argument that the plaintiffs'

common gang membership was probative of their credibility. Weighing the probative value

against the potential for unfair prejudice, however, the court barred the evidence"); Lopez v. City

of Chicago, 2005 WL 563212, at *5 (N.D. Ill. March 8, 2005) (Der-Yeghiayan, J.) (rejecting

argument that gang affiliation went to Section 1983 plaintiff's damages and concluding that the

unfair prejudice outweighed relevance); United States v. Davis, 2001 WL 1195729, at *2

(N.D.Ill. Oct. 9, 2001) (Kennelly, J.) (excluding gang references as "enormously and unfairly

prejudicial" under FRE 403). The same conclusion is warranted here.

     For the same reasons described above, the Defendants should also not be permitted to

refer to themselves as "gang team" officers. Their assignment to a unit so-named the "gang team"

at the time of their encounter with Mr. Hughes has no relevance to this matter. First, Defendant

Uczen acknowledged at deposition that there is not even a material difference between a Chicago

Police Department "gang team" and a "tactical team." See Exhibit C (excerpts of deposition of

Defendant Uczen) at 9. Second, the Defendant Officers, by their own admissions, pulled Mr.

Hughes over for "minor traffic" violations, id. at 68, not for any reason having anything to do with gangs. Thus, references to the officers' membership in the CPD "gang team" would only serve to unfairly prejudice the jury against Mr. Hughes.

WHEREFORE, Plaintiffs respectfully request that this Court bar all references to gangs at trial, including references to Defendant Officers' membership in a "gang team."

## PLAINTIFFS' MOTION *IN LIMINE* NO. 7 TO BAR REFERENCE TO TRAFFIC TICKETS THAT MS. STAGGER-HUGHES HAS RECEIVED

Plaintiffs, by their counsel, Loevy & Loevy, respectfully request an Order barring all reference to tickets that Ms. Stagger-Hughes may have received for moving violations. In support, Plaintiffs state as follows:

### Argument

Defense counsel asked Ms. Stagger-Hughes at her deposition if she had received traffic tickets, to which Plaintiff responded that she had received some driving-related citations in the past.

Ms. Stagger-Hughes was not present at the scene of the traffic stop and arrest. This case has absolutely nothing to do with the manner in which Ms. Stagger-Hughes drives, nor about her history of traffic tickets. The Defendant Officers never even encountered Ms. Stagger-Hughes. Under FRE 402 and 403, such evidence clearly should be barred.

WHEREFORE, Plaintiffs respectfully requests that this Court enter an Order barring any reference to any traffic tickets that Plaintiff Stagger-Hughes may have received.

26

**PLAINTIFFS' MOTION *IN LIMINE* NO. 8 TO BAR UNDISCLOSED
WITNESSES AND DOCUMENTS**

Plaintiffs, by their counsel, Loevy & Loevy, respectfully request an Order barring
Defendants from calling witnesses at trial whom they did not disclose pursuant to the Court's
scheduling orders and the Federal Rules, and barring Defendants from utilizing documents that
they also did not properly disclose.

**Argument**

The Federal Rules of Civil Procedure require that parties disclose, during the discovery
period, those witnesses on whom they plan to rely at trial. Under the Rules' plain terms, the
Defendants should not be permitted to call people as witnesses whom they failed to disclose
during the discovery period. FRCP 26(a)(3). Defendants have included a witness on the proposed
pretrial order whom they never disclosed during discovery (Assistant State's Attorney Mikki
Miller), and therefore Plaintiffs never had the opportunity to depose during the fact discovery
period, along with various undisclosed "records keepers." This is not permitted under the Rules.
See Anglin v. Sears, Roebuck and Co., 139 F.Supp. 2d 914, 917-18 (N.D.Ill. 2001) ("[c]ourts in
the Seventh Circuit routinely bar witnesses from testifying at trial, where the witnesses have not
been produced in accordance with a court's discovery deadlines, thereby impeding opposing
party's opportunity to adequately prepare for trial"); Santiago v. Furniture Chauffeurs, 2001 WL
11058, at *7 (N.D.Ill. Jan. 4, 2001) ("Civil litigation is not a game of hide-the-ball").

The same goes for documents that Defendants never disclosed. Defendants must not be
permitted to rely on documentation at trial that they failed to disclose during the discovery period
set by the Court, as Plaintiffs will have had no opportunity to perform discovery into their
contents. Such eleventh-hour disclosures must not be permitted due to their prejudicial impact.

WHEREFORE, Plaintiffs respectfully requests that this Court enter an Order barring Defendants from utilizing undisclosed witnesses and documents at trial.

**PLAINTIFFS' MOTION *IN LIMINE* NO. 9 TO BAR TESTIMONY OR ARGUMENT THAT AN ADVERSE VERDICT WOULD LEAD TO PUNISHMENT BY THE CPD OR <u>DAMAGE TO DEFENDANTS' CAREER</u>**

Plaintiffs, by their counsel, Loevy & Loevy, respectfully request an Order barring testimony or argument that a verdict against either officer would harm their careers.

<b>Argument</b>

This Court recently barred a defendant from suggesting at trial "that he could be disciplined or otherwise punished by the Chicago Police Department or that an adverse verdict would pose a risk to his career." Exhibit H, <u>Holman vs. Record</u>, 10 C 5557, Dckt. No. 38 at p. 3 (June 4, 2012).

The same ruling is appropriate here for two reasons. First, there is no evidence that the Chicago Police Department does or would in fact punish these Defendants for proved misconduct. The Court pointed out in <u>Holman</u> that, for that reason, such an argument would lead to an impermissible, confusing side trial about whether or not a Chicago police officer would actually be punished for misconduct. Exhibit H at 3. Second, it is improper to make the argument that the fact that a defendant may have faced punishment by his employer would have made it less likely that he committed the alleged acts. Exhibit H at 3; <u>United States v. Johnson-Dix</u>, 54 F.3d 1295, 1304-05 (7th Cir. 1995).

WHEREFORE, Plaintiffs respectfully requests that this Court enter an Order barring Defendants from presenting testimony or argument that a verdict against them would lead to discipline or punishment by the CPD, or that it would harm their careers.

**PLAINTIFFS' MOTION *IN LIMINE* NO. 10 TO BAR TESTIMONY ABOUT IRRELEVANT FACTS UNKNOWN TO DEFENDANTS AT THE TIME OF ARREST AND ARGUMENT THAT THE FACTS FURNISHED PROBABLE CAUSE**

Plaintiffs, by their counsel, Loevy & Loevy, respectfully request an Order barring any testimony about irrelevant facts unknown to Defendants when they arrested Mr. Hughes or argument he was properly arrested based on those facts. In support, Plaintiffs state as follows:

### Argument

In regard to claims of false arrest, as this Court has pointed out, the "law is clear that the jury must assess whether there was probable cause to arrest from an objective standard based solely on what an officer knew at the time of arrest." Exhibit H, Holman vs. Record, 10 C 5557, Dckt. No. 38 at 1 (June 4, 2012) (Dow, J.), citing Reynolds v. Jamison, 488 F.3d 756, 765 (7th Cir. 2007) ("The fact that an officer later discovers additional evidence unknown to her at the time of arrest … is irrelevant - we only care about what the officer knew at the time the decision was made.") See also Carmichael v. Village of Palatine, Ill., 605 F.3d 451, 457 (7th Cir. 2010) ("'probable cause depends not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer* - seeing what he saw, hearing what he heard.")*, citing Mahoney v. Kesery, 976 F.2d 1054, 1057 (7th Cir. 1992) (emphasis in original). See also Gonzalez v. City of Elgin, 578 F.3d 526, 537 (7th Cir. 2009).

Mr. Hughes has testified that the Defendants never asked him for proof of insurance. Defendant Uczen claims that Mr. Hughes told him that he did not have insurance,[5] but that he did not learn this until *after* he had arrested Mr. Hughes:

---

[5] Plaintiffs are putting aside for the purposes of this motion that it is actually immaterial whether Mr. Hughes had his own insurance, so long as his wife's car was properly insured such that Mr. Hughes could drive it.

> Q: And when did you learn that he didn't have insurance?
> A: After our initial traffic stop.
> Q: When after your initial traffic stop?
> A: I believe at time I asked him if you have insurance and he says, he does not.
> Q: Do you recall while he was handcuffed? Before he was handcuffed? After he was handcuffed?
> A: Probably after he was handcuffed.

Exhibit C (excerpt from deposition of Defendant Uczen) at 156-157.[6]

The law is clear: a fact that Defendant Officers admit was not learned until after arrest cannot form a proper basis for arrest. See Exhibit H at 2 (barring the questioning of Plaintiff at trial about a relationship that Defendant may have learned about only after arrest). Thus, evidence or testimony about a lack of automotive insurance or the fact that Ms. Hughes' policy had temporarily lapsed, along with any argument that such facts provided probable cause for arrest, would be irrelevant, confusing to the issues, and unfairly prejudicial. FRE 401, 403.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter an Order barring any testimony or argument that facts unknown to Defendants at the time of the arrest furnished probable cause, including any evidence regarding the status of Plaintiffs' automotive insurance policy.

---

[6] At deposition, Ms. Hughes was candid that at the time of her husband's arrest, her insurance for the car he was driving had temporarily lapsed due to a missed payment. Mr. Hughes did not know this, and therefore this is not something that could have been known to the Defendants, even if they had asked Mr. Hughes about insurance (which Mr. Hughes testifies they did not) and even if had they done so *before* they arrested him (which Defendant Uczen admits they probably did not, Exhibit C at 156-7).

**PLAINTIFFS' MOTION *IN LIMINE* NO. 11**
**TO BAR ANY ARGUMENTS APPEALING TO THE JURY AS TAXPAYERS OR**
**REFERENCING THE SOURCE OF PAYMENT FOR ANY JUDGMENT**

Plaintiffs, by their counsel, Loevy & Loevy, respectfully move *in limine* for an order

barring all arguments appealing to jurors as taxpayers or referencing the source of the payment

for any judgment. In support, Plaintiffs state as follows:

**Argument**

As the Seventh Circuit confirmed, arguments that appeal to jurors' pecuniary interests as

taxpayers are "of course" generally improper. See Moore ex rel. Estate of Grady v. Tujela, 546

F.3d 423, 429 (7th Cir. 2008) (declaring the following argument improper: "The city is not a

random amorphous entity. It's you. We're talking about tax dollars here."). All such argument

should be barred, as should any reference to the financial condition of the City of Chicago or the

fact that the judgment will be paid with taxpayer money.

WHEREFORE, Plaintiffs respectfully request that this Court bar all arguments appealing

to jurors as taxpayers and/or referencing the financial condition of the City of Chicago or the

source of the payment for any judgment.

RESPECTFULLY SUBMITTED,


S/ Samantha Liskow
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Samantha Liskow
Vince Field
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900




**CERTIFICATE OF SERVICE**

The undersigned states that on June 7, 2012, I filed these Motions *in Limine* via CM/ECF and thus served them upon counsel of record.

/S/ Samantha Liskow